IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
NEWNAN DIVISION

| | |
|---|---|
| DONALD WAYNE TOENNIGES,<br><br>    Plaintiff,<br><br>    v.<br><br>AIG, D/B/A AMERICAN GENERAL LIFE COMPANIES, ANN HENDERSON, SHARITA DOUGLAS-LANE, UNITED BANK, JAMES SKINNER JR., HEATHER HILL, BANK OF AMERICA, DENSI BOWIE-GREEN, STATE FARM, AND DAN ANDREWS,<br><br>    Defendants. | CIVIL ACTION<br>NO. 3:10-CV-95 |

O R D E R

Pending before the Court are Defendants' Motions to Dismiss [#'s 9, 13, 17, 20, 23 & 27]. This action arises out of several financial transactions conducted by Plaintiff's then-wife, Debra Toenniges. Plaintiff, who is proceeding *pro se*, contends that Debra Toenniges cashed out his life insurance policy, cashed a check payable to him, and obtained a loan using his identity. Debra Toenniges, however, is not a defendant in this action. Instead, Plaintiff brought this action against various financial institutions and their employees challenging the financial transactions engineered by Debra Toenniges. Plaintiff asserts claims for conversion, violations of the

Racketeer Influenced and Corrupt Organizations Act ("RICO"), and violations of his right to due process.  Defendants move to dismiss the Complaint in its entirety.  The Court **GRANTS in part** Defendants' motions [#'s 9, 13, 17, 20, 23 & 27] and **DISMISSES** Plaintiff's federal claims.

I.   Procedural Background

Plaintiff brought this action in the Superior Court of Spalding County, Georgia.  After being served with the Complaint, Defendant Bank of America removed the action to this Court based on federal question jurisdiction arising pursuant to Plaintiff's federal constitutional claims and his federal RICO claims.  Subsequently, Defendants filed separate motions to dismiss.  In response to these motions, Plaintiff conceded that the original Complaint contained errors and filed a supplement to his original Complaint (the "Amended Complaint") in an effort to correct these errors.  The supplement adopted the factual allegations in the original Complaint and set forth additional factual allegations supporting his claims.  Defendants then either moved to dismiss the Amended Complaint or reasserted their prior motions. In response to Defendants moving to dismiss the Amended Complaint, Plaintiff filed a motion for leave to file a second amended complaint.

## II.     Factual Background[1]

Plaintiff is currently incarcerated in Wilcox State Prison.  In 2005, Plaintiff signed a durable power of attorney designating Debra Toenniges as his "attorney-in-fact." (Pl.'s Compl. pp. 3, 5-6.)  In early 2006, however, Plaintiff realized that Debra Toenniges was using the power of attorney to liquidate his assets.  (Id. p. 14.)  Accordingly, he sent her a letter in March 2006, requesting that she stop using the power of attorney.  (Id. pp. 3, 14.)  A month later, Debra Toenniges sent him a letter stating that she would no longer use the power of attorney.  (Id. pp. 3, 6, 14.)  Plaintiff filed "an official revocation" of the power of attorney in July.  (Id. p. 6.)  Meanwhile, Debra Toenniges filed for divorce.  (Id. p. 8.)

### A.     The State Farm Life Insurance Policy

Plaintiff had a life insurance policy with Defendant State Farm Life Insurance Company ("State Farm").  (Pl.'s Am. Compl. p. 1.)  This insurance policy had a cash value of approximately $17,000.00.  (Pl.'s Compl. p. 7.)  In June 2006, Debra Toenniges used the power of attorney to surrender the policy. (Id. pp. 3,7.)  Defendant State Farm then issued two checks made payable to Plaintiff, which Debra Toenniges endorsed and cashed.  (Pl.'s Am.

---

[1] Plaintiff filed an Amended Complaint incorporating the factual allegations of his original Complaint.  As such, the Court refers to both the Complaint and the Amended Complaint in this Order.

Compl. pp. 2-4.) Plaintiff, however, did not discover that she surrendered the policy and cashed the checks until two months later. (Id. p. 7.)

Upon learning of Debra Toenniges's actions, Plaintiff's father filed a complaint with Defendant State Farm. (Id. p. 2.) His father also forwarded the correspondences between Plaintiff and Debra Toenniges regarding the use of the power of attorney to Defendant State Farm. (Id.) Plaintiff requested that Defendant State Farm reissue the checks because he did not receive any of the proceeds. (Id. p. 3.)

Defendant Dan Andrews, an employee of Defendant State Farm, reviewed Plaintiff's complaint but concluded that Defendant State Farm did not have notice of the revocation of the power of attorney at the time Debra Toenniges surrendered the policy. (Id. p. 3.) Accordingly, Defendant State Farm refused to reissue the two checks. (Id.) In response to a related complaint filed by Plaintiff's father with the Office of Insurance and Safety Fire Commissioner (the "Insurance Commissioner"), Defendant Andrews sent a letter to the Insurance Commissioner stating that Defendant State Farm did not have notice of Plaintiff's intention to revoke the power of attorney prior to Debra Toenniges surrendering the policy. (Id.)

### B. The American General Life Insurance Policy

At some point, Plaintiff also had a life insurance policy with Defendant American General Life Insurance Company ("American General"). (Id. p. 13.)

Although not entirely clear from the Amended Complaint, it appears that this policy lapsed, and Plaintiff's father contacted Defendant American General regarding what he needed to do in order to reinstate the policy. (Id.) Defendant American General informed Plaintiff's father that reinstating the policy would require a payment of $4037. (Id. p. 14.)  Plaintiff then "had a certified check drawn on United Bank," which he sent to Defendant American General. (Id.) Defendant American General, however, declined to renew the policy and returned the funds to Plaintiff's address in Georgia, instead of his father's address in Ohio. (Id.) This check then found its way into the hands of Debra Toenniges. (Id. p. 15.)

Upon receipt of the returned funds, Debra Toenniges deposited the majority of the check into an account with Defendant United Bank, taking only $200 in cash. (Id.) Plaintiff demanded that Defendant Bank of America repay the $4037 and provided notice of Debra Toenniges's allegedly fraudulent actions to Defendant Densi Bowie-Green, a Bank of America employee.[2] (Id. pp. 10, 11.) Defendant Bank of America refused to repay the funds.  After receiving a complaint from Plaintiff regarding the address where Defendant United Bank mailed the check, American General employees Sharita Douglas Lane and Ann Henderson investigated the matter. (Id. pp.

---

[2] Neither the Complaint nor the Amended Complaint are clear as to why Plaintiff made this demand on Bank of America instead of American General.

15-16.)  Plaintiff, however, never received the funds from either Defendant Bank of America or American General.  (Id.)

### C.   The United Bank Loan and Related Transactions

Debra Toenniges also used Plaintiff's identity to take out a loan in his name with Defendant United Bank for $13,970.00.  (Pl.'s Compl. p. 8.)  Plaintiff was not aware of the loan and received no benefit from it.  (Pl.'s Am. Compl. p. 7.)

In addition to the personal loan, Debra Toenniges either cashed or deposited the two State Farm checks and the returned check from Defendant American General at a branch office of United Bank.  (Id. pp. 6-8.)  After learning about the State Farm checks, Plaintiff's father asked Defendant James Skinner, Jr., a United Bank employee, if he would have Defendant State Farm dishonor the checks.  (Id. p. 7.)  Defendant Skinner refused to do so.  (Id.)

Defendant Skinner and Defendant United Bank also refused to dishonor the returned check from Defendant American General.  (Id. p. 8.)  Another United Bank employee, Defendant Bethany Hill, sent a letter to Defendant Bank of America stating that Plaintiff received a benefit from the returned check.  (Id. p. 9.)  Plaintiff, however, contends that the he did not in fact receive any benefit from these funds.  (Id.)  In response to the investigation by the Insurance Commissioner, Defendants Lane and

6

Henderson forwarded Defendant Hill's letter to the investigator. (Id. p. 10.) This action followed.

## II. Legal Standard

The central issue for resolving a Rule 12(b)(6) motion is whether the complaint states a valid claim for relief. In considering a defendant's motion, the Court accepts the allegations in the complaint as true and construes them in the light most favorable to the plaintiff. Ambrosia Coal & Constr. Co. v. Pages Morales, 482 F.3d 1309, 1316 (11th Cir. 2007); Powell v. United States, 945 F.2d 374, 375 (11th Cir. 1991). "Although it must accept well-pled facts as true, the court is not required to accept a plaintiff's legal conclusions." Sinaltrainal v. Coca-Cola Co., 578 F.3d 1252, 1260 (11th Cir. 2009).

The complaint need not contain "detailed factual allegations," but must contain sufficient factual allegations to suggest the required elements of a cause of action. Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 555, 127 S. Ct. 1955, 1964-65 (2007); Watts v. Fla. Int'l Univ., 495 F.3d 1289, 1295-96 (11th Cir. 2007). "[A] formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555, 127 S. Ct. at 1965. Nor will mere labels and legal conclusions suffice. Id. Rule 8 of the Federal Rules of Civil Procedure "demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." Ashcroft v. Iqbal, 556 U.S. \_\_\_\_, 129 S. Ct. 1937, 1949 (2009). The complaint is required to contain "enough facts to state a

claim to relief that is plausible on its face." Twombly, 550 U.S. at 570, 127 S. Ct. at 1974. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Iqbal, 556 U.S. ___, 129 S. Ct. at 1949; see also Sinaltrainal, 578 F.3d at 1260. "The mere possibility the defendant acted unlawfully is insufficient to survive a motion to dismiss." Sinaltrainal, 578 F.3d at 1260. Ultimately, the well-pled factual allegations must move a plaintiff's claims from possible to plausible. Twombly, 550 U.S. at 570, 127 S. Ct. at 1974; Sinaltrainal, 578 F.3d at 1260.

### III.   Analysis

#### A.   Plaintiff's Due Process Claims

Section 1983 provides a private right of action where an individual, acting under the color of state law, deprives the plaintiff of "any rights, privileges, or immunities secured by the Constitution and laws . . . ." 42 U.S.C. § 1983. "Section 1983 alone creates no substantive rights; rather, it provides a remedy for deprivations of rights established elsewhere in the Constitution or federal laws." Russell v. Fannin County Sch. Dist., 784 F. Supp. 1576, 1580 (N.D. Ga. 1992) (O'Kelley, C.J.). Accordingly, a plaintiff must allege a violation of a right secured by federal law. See Skinner v. City of Miami, Fla., 62 F.3d 344, 347 (11th Cir. 1995).

Here, Plaintiff asserts claims for the deprivation of a "liberty interest" protected under the Fourteenth Amendment to the United States Constitution. (Pl.'s Compl. p. 12.) Plaintiff's due process claims, however, fail because the Fourteenth Amendment applies only to states and state actors; its does not protect against injuries by private entities or individuals. See Jeffries v. Georgia Residential Fin. Auth., 678 F.2d 919, 922 (11th Cir. 1982) ("It is well settled that the fourteenth amendment proscription against deprivations of property without due process of law reaches only government action and does not inhibit the conduct of purely private persons in their ordinary activities."); Langston v. ACT, 890 F.2d 380, 384 (11th Cir. 1989) ("The Fourteenth Amendment does not apply to private parties unless those parties are engaged in activities deemed to be 'state action.'"); Howard v. Wal-Mart, 175 F. App'x 282, 283-84 (11th Cir. 2006). The Defendants in this case are all private actors, and the Complaint and Amended Complaint are devoid of any factual allegations supporting a claim that Defendants' actions were tantamount to state action. Accordingly, Plaintiff's constitutional claims are subject to dismissal.

### B.   Plaintiff's Federal RICO Claims

RICO makes it "unlawful for any person employed by or associated with any enterprise engaged in, or in the activities of which affect interstate or foreign commerce, to conduct or participate, directly or indirectly, in the

conduct of such enterprise's affairs through a pattern of racketeering activity . . . ." 18 U.S.C. § 1962(c).  An individual injured in his or her business or property by a RICO violation may bring a civil action and seek recovery of treble damages, plus reasonable attorneys' fees.  18 U.S.C. §1964(c).

In order to establish a federal civil RICO violation pursuant to Section 1962(c), a plaintiff must establish four elements: (1) conduct (2) of an enterprise (3) through a pattern (4) of racketeering activity.  Edwards v. Prime, Inc., 602 F.3d 1276, 1291-92 2010 (11th Cir. 2010); Williams v. Mohawk Indus., Inc., 465 F.3d 1277, 1282 (11th Cir. 2006).  In addition, a plaintiff must show that the he or she suffered an injury to business or property, and that this injury was "by reason of" the substantive RICO violation.  Williams, 465 F.3d at 1283.

A plaintiff demonstrates a pattern of racketeering activity by showing the commission of at least two distinct predicate acts, listed in 18 U.S.C. § 1961.  Edwards, 602 F.3d at 1292; Williams, 465 F.3d at 1283.  Mail fraud constitutes a predicate act under RICO.  18 U.S.C. § 1961(1).  "Mail . . . fraud occurs when a person (1) intentionally participates in a scheme to defraud another of money or property and (2) uses the mails . . . in furtherance of that scheme."  Pelletier v. Zweifel, 921 F.2d 1465, 1498 (11th Cir. 1991).  A plaintiff, however, must plead the predicate act of mail fraud with the particularity required by Rule 9(b) of the Federal Rules of Civil Procedure.

American United Life Ins. Co. v. Martinez, 480 F.3d 1043, 1065 (11th Cir. 2007); American Dental Ass'n v.Cigna Corp., 605 F.3d 1283, 1291 (11th Cir. 2010).  Accordingly, a plaintiff must allege:

> (1) the precise statements, documents, or misrepresentations made; (2) the time, place, and person responsible for the statement; (3) the content and manner in which these statements misled the Plaintiffs; and (4) what the defendants gained by the alleged fraud.

American Dental, 605 F.3d at 1291 (quotations and citation omitted).

Plaintiff's RICO claims are based on the alleged predicate acts of mail fraud. (Pl.'s Compl. p. 9-10.)  Specifically, Plaintiff alleges that:

> Sharita Douglas-Lane of AIG, Heather Hill of The Bank, and Denis Bowie-Green of B of A worked in concert together while enterprising through the misrepresentations of facts to protect themselves from suffering loss due to their prior errors and delays.  Their misrepresentations of material fact relating to finances, were sent through the U.S. mail on more than one occasion . . . violating 18 U.S.C. § 1341, inevitably defrauding Mr. T out of his property.

(Pl.'s Compl. p. 9.)  Presumably, these allegations refer to a letter that Defendant Hill sent to Defendant Bank of America "stating that [Plaintiff] received benefit of the AIG refund check." (Pl.'s Am. Compl. p. 9.)  Plaintiff contends that this letter is inaccurate because he did not in fact receive a benefit from the check.  (Id.)  At some point, one of the other Defendants forwarded this letter through the mail to either Plaintiff or a third party.  (Id. pp. 11-12.)

11

Plaintiffs conclusory allegations supporting his RICO claims and his allegations of mail fraud fail to satisfy the pleading requirements of Rule 9(b). Although Plaintiff refers to one letter that Defendant Hill sent to Defendant Bank of America, this general allegation is insufficient to establish the predicate act of mail fraud or state a RICO claim. Moreover, it is unclear how any alleged misstatement by Defendants misled Plaintiff or what, if any, gain Defendants could hope to obtain by the alleged fraud. In short, Plaintiff fails to set forth sufficient factual allegations in his Complaint and Amended Complaint showing the commission of at least two distinct predicate acts by Defendants . Accordingly, Plaintiff's federal RICO claims are subject to dismissal.

### C. The State Law Claims

None of Plaintiff's federal claims remain. The sole remaining claim is Plaintiff's claim for conversion under Georgia law. The Court declines to exercise supplemental jurisdiction over this claim. See 28 U.S.C. § 1367(c)(3)

### D. Plaintiff's Motion to Amend

Federal Rule of Civil Procedure 15(a) provides that a party may amend its pleading twenty-one days after service of a responsive pleading or a Rule 12(b) motion "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a). Rule 15(a) further provides that "[t]he court

should freely give leave when justice so requires." Id. A district court may deny leave on a number of grounds, including undue delay, undue prejudice to the opposing party, or that the amendment is futile. Hall v. United Ins. Co. of Am., 367 F.3d 1255, 1263 (11th Cir. 2004); Carruthers v. BSA Adver., Inc., 357 F.3d 1213, 1218 (11th Cir. 2004); Kinglsey v. State Farm Mut. Auto. Ins. Co., 353 F. Supp. 2d 1242, 1245 (N.D. Ga. 2005) (Duffey, J.). The decision to allow a party leave to amend, however, ultimately rests within the sound discretion of the district court. Foman v. Davis, 371 U.S. 178, 182 (1962).

Plaintiff's proposed amendments to his federal claims are futile. In response to Defendants' initial motions to dismiss, Plaintiff filed a supplement to his Complaint adding additional factual allegations in order to clarify his claims. After the Defendants renewed their motions to dismiss, Plaintiff moved the Court for leave to file a second amended complaint, which he attached to his motion. Allowing Plaintiff leave to file his proposed amendment, however, would be futile because it, like his original Complaint and Amended Complaint, fails to state a federal RICO or constitutional claim and would still be subject to dismissal. See Hall, 367 F.3d at 1263. Accordingly, the Court **DENIES** Plaintiff's Motion to Amend Complaint [# 49].

IV. Conclusion

The Court **GRANTS in part** Defendants' motions to dismiss [#'s 9, 13, 17, 20, 23 & 27]. The Court **DISMISSES** all of Plaintiff's federal claims. The Court **REMANDS** this case to the Superior Court of Spalding County, Georgia to resolve the remaining state law claims. The Court **DENIES** Plaintiff's Motion to Amend Complaint [# 49].

**SO ORDERED**, this 9th day of December, 2010.

_____
WILLIS B. HUNT, JR.
SENIOR UNITED STATES DISTRICT JUDGE